IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02012-KLM

NICHOLAS ERKER,

      Plaintiff,

v.

CARRIE SCHMEECKLE, individually, and as an agent and/or employee of the Morgan County Department of Human Services,
MORGAN COUNTY DEPARTMENT OF HUMAN SERVICES,
JACQUE FRENIER, Director of the Morgan County Department of Human Services,
ROGELIO SEGURA, Deputy Director of the Morgan County Department of Human Services, and
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MORGAN, COLORADO,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss** [#9] (the "Motion"), filed by Defendants Carrie Schmeeckle ("Schmeeckle"), Morgan County Department of Human Services ("MCDHS"), Jacque Frenier ("Frenier"), Rogelio Segura ("Segura"), and Board of County Commissioners of the County of Morgan, Colorado ("BOCC") (collectively, "Defendants"). Plaintiff filed a Response [#14] in opposition to the Motion [#9], and Defendants filed a Reply [#16]. With the Court's permission, Plaintiff additionally filed a Surreply [#31], and Defendants filed a Sur-Surreply [#34]. *See Minute Orders* [#29, #33]. The Court has reviewed the Motion [#9], the Response [#14], the Reply [#16], the

- 1 -

Surreply [#31], the Sur-Surreply [#34], the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#9] is **GRANTED**.[1]

## I.  Background

Plaintiff alleges the following facts as the basis for his claims.[2]  This case derives from what Plaintiff claims to be an improper investigation of him, carried out by Adult Protective Services ("APS"), and the subsequent criminal action taken against him in Morgan County District Court ("MCDC").  *See Compl.* [#1] ¶¶ 13, 14.  In or around June 2020, Defendant MCDHS assigned Defendant Schmeeckle, an APS caseworker, to assess an allegation brought to the attention of APS relating to Plaintiff's wife, Mrs. Shayla Erker ("Erker").  *Id.*  During the APS assessment, Defendant Schmeeckle interviewed Plaintiff, Mrs. Erker, and other witnesses.  *Id.* ¶ 15.  Plaintiff "submitted video evidence, witness evidence and other information directly related and relevant to the incident and the assessment" but alleges that Defendant Schmeeckle "did not review or take into consideration any of the evidence . . . in [MCDHS's] decision or in its dealings with Mrs. Erker."  *Id.* ¶ 17.

"[B]ased on Plaintiff hitting Mrs. Erker and the circumstances surrounding the hit," Defendants Schmeeckle and MCDHS found the allegation that Plaintiff had abused an

---

[1]  This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#13, #26].

[2]  For the purposes of resolving the Motion [#9], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006)).

at-risk adult, Mrs. Erker, to be substantiated.[3]  *Id.* ¶ 18.  At an unknown date, Plaintiff appealed the substantiated finding to the Colorado State Department of Human Services ("CDHS"), which overturned the finding and dismissed the case.  *Id.* ¶ 19.  CDHS made this decision because it found that, for the purposes of APS, Mrs. Erker did not qualify as an at-risk adult.  *Id.*

Throughout the Complaint [#1], Plaintiff refers to a "criminal action against him in Morgan County, Colorado."  *Id.* ¶ 13.  However, although the Court may infer that the criminal action generally relates to the allegation that Plaintiff assaulted Mrs. Erker, *see id.* ¶ 22, Plaintiff does not explicitly state as much, nor does he provide any details relating to the action, such as the specific charges against him or the status of the case. Nevertheless, Plaintiff alleges that, in or around August 2020, Defendant Schmeeckle, based on her determination that Mrs. Erker was an at-risk adult, "contacted the Morgan County District Attorney's Office and requested that a misdemeanor charge against Plaintiff be increased to a felony."  *Id.* ¶ 20.  Additionally, Defendant Schmeeckle "called the police on Plaintiff after Mrs. Erker claimed that [Plaintiff] had violated the terms of a protection order while dropping off their two young children in the driveway of the former residence that he and Mrs. Erker used to share."  *Id.* ¶ 26.  Plaintiff alleges that Defendant Schmeeckle did so without attempting to get information from Plaintiff regarding the incident and by "us[ing] Mrs. Erker as her sole source of information."  *Id.* ¶ 28.

---

[3]  In Plaintiff's filings, he refers to the results of the APS investigation in this case using the phrase "a finding of 'founded[.]'"  *See, e.g.*, *Compl.* [#1] ¶ 18.  However, the Court uses the terminology, "a substantiated finding," which is employed by the APS Administrative Code, to refer to the results of the APS investigation.  *See* 12 Colo. Code Regs. § 2518-1:30.520 (2022).

On July 26, 2021, Plaintiff initiated this action, seeking injunctive and declaratory relief and nominal and compensatory damages from Defendants.  *See id.* ¶ 5.  Plaintiff brings claims against Defendants under the Fourth, Eighth, and Fourteenth Amendments, predicated on 42 U.S.C. § 1983.[4]  *Id.* ¶ 71.  Plaintiff additionally brings state law claims for defamation, defamation per se, intentional infliction of emotional distress, malicious prosecution, and negligence.  *Id.* ¶¶ 41-69.  Defendants filed the present Motion [#9] seeking dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants argue that Plaintiff's claims must be dismissed because (1) Plaintiff has failed to plausibly state a claim for any constitutional violation, and (2) the Court lacks subject matter jurisdiction over Plaintiff's state law claims.  *See Motion* [#9] at 3, 13-15.

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden

---

[4]  In the Complaint [#1], Plaintiff initially states that his "claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the *First* and Fourteenth Amendments of the U.S. Constitution and the laws of the United States."  *Compl.* [#1] ¶ 3 (emphasis added).  However, Plaintiff never again refers to the First Amendment in any of his filings, nor do Defendants.  The Court construes this to mean that Plaintiff does not actually bring a § 1983 claim under the First Amendment, and, as such, the Court does not address the First Amendment in this Order.

of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* at 1003. When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.      Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent,

then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully." *Id.* (citation omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ]

that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

### A.    Constitutional Claims

Plaintiff claims that Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments.  *Compl.* [#1] ¶ 71.  Specifically, Plaintiff asserts that Defendants violated:

> [T]he right to liberty, the right to due process of law, the right to freedom from unreasonable and excessive force and outrageous abuse, coercion and intimidation, the right to be secure in his person and effects from unreasonable seizure, the right to freedom from unlawful or unwarranted arrest, and the right to be free from cruel and unusual punishment.

*Id.*

Defendants argue that Defendant MCDHS and Defendants Frenier, Segura, and Schmeeckle, all in their official capacities, (collectively, the "MCDHS Defendants") are protected from liability for monetary damages by Eleventh Amendment sovereign immunity.  *Reply* [#16] at 8-9.  Further, Defendants argue that Plaintiff has failed to show that Defendant Schmeeckle, in her individual capacity, violated a clearly established right under the Fourth, Eighth, or Fourteenth Amendments, and that, as such, she is entitled to qualified immunity.  *Motion* [#9] at 2, 13-14.  Lastly, Defendants argue that neither the MCDHS Defendants nor Defendant BOCC may be held liable under theories of respondeat superior or municipal liability.  *Id.* at 2, 14-15.

The Court addresses, in turn: (1) whether the MCDHS Defendants are protected by Eleventh Amendment immunity; (2) whether Defendant Schmeeckle, in her individual

capacity, is entitled to qualified immunity; (3) whether the claims for injunctive and declaratory relief against the MCDHS Defendants are viable; and (4) whether Defendant BOCC is subject to municipal liability.

### 1.    Eleventh Amendment Immunity

Plaintiff seeks nominal and compensatory damages from Defendants. *Compl.* [#1] ¶ 5.  However, the MCDHS Defendants argue that they are immune from liability for damages under the Eleventh Amendment. *Reply* [#16] at 8-9.

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted).  Eleventh Amendment protection extends "to state agencies functioning as an arm of the state." *Id.* (citation omitted). Further, "[s]uits against state officials in their official capacity should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Eleventh Amendment immunity may be waived by an Act of Congress or by a state, "through a clear expression of its intent to waive." *Hunt*, 271 F. App'x at 780-81.  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky*, 473 U.S. at 169 (citation omitted).  42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity. *See id.* at 781 (citations omitted).

The MCDHS Defendants argue that they are entitled to Eleventh Amendment immunity because county departments of human services are an arm of the State of

Colorado.   *Reply* [#16] at 8.   The Tenth Circuit has identified five factors for courts to consider when determining whether a governmental unit is an arm of the state: (1) how the governmental unit is characterized under state law; (2) how much guidance and control the state exercises over the governmental unit; (3) how much funding the governmental unit receives from the state; (4) whether the governmental unit enjoys the ability to issue bonds and levy taxes; and (5) whether the state bears legal liability to pay a judgment against the governmental unit.   *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017) (citing *Sturdevant v. Paulsen*, 218 F.3d 1160, 1166 (10th Cir. 2000)).

Plaintiff asserts that whether a county department of human services is an arm of the state is a question of fact that cannot be decided without a factual inquiry.   *Surreply* [#31] at 2-3 (citing *T.D. v. Patton*, 149 F. Supp. 3d 1297 (D. Colo. 2016) (holding on a motion for summary judgment that the Denver Department of Human Services constituted an arm of the state); *Blea v. City & Cnty. of Denver Dep't of Hum. Servs.*, No. 17-cv-03145-CMA-NRN, 2018 WL 6182432 (D. Colo. Nov. 26, 2018) (citing Judge Moore's "arm-of-the-state" analysis in *T.D.*, 149 F. Supp. 3d 1297)).   However, in *Wise v. Arapahoe County Department of Human Services*, No. 20-cv-01952-MEH, 2021 WL 981318, at *6 (D. Colo. Mar. 16, 2021), the court rejected a similar argument at the motion to dismiss stage:

> Plaintiffs contend that it is a fact question whether [Arapahoe County Department of Human Services] qualifies as [an arm of the state].   However, case law already has considered the status of Colorado's county-level departments of human services as created by Colo. Rev. Stat. § 26-1-118(1).   The uniform answer is that they are arms of the state and as such enjoy Eleventh Amendment sovereign immunity.   *Goodwin v. Connell*, 376 F. Supp. 3d 1133 (D. Colo. 2019); *Schwartz v. Jefferson Cnty. Dep't of Hum. Servs.*, No. 09-cv-00915-WJM, 2011 WL 1843309, at *2 (D. Colo. May 16,

2011) . . . .  Plaintiffs cite no contrary case law or changed circumstances since the 2019 *Goodwin* ruling that would warrant renewed *de novo* inquiry.

To support the unanimity of this contention, the MCDHS Defendants have cited sixteen cases from the District of Colorado, twelve of which relate to a motion to dismiss, each holding that county departments of human services are arms of the state protected by Eleventh Amendment immunity.  *See Sur-Surreply* [#34] at 2-4; *see also, e.g.*, *Harper v. Montezuma Cnty. Bd. of Cnty. Comm'rs*, No. 18-cv-02225-WJM-STV, 2018 WL 10502084, at *4 (D. Colo. Dec. 3, 2018) (holding on a motion to dismiss that the Montezuma County Department of Social Services was an arm of the state and protected by Eleventh Amendment immunity); *Blea*, 2018 WL 6182432, at *4 (recommending that claims against the Denver Department of Human Services "be dismissed on the ground that the Department is an arm of the State of Colorado, and, as such, is immune from suit in the federal court under the Eleventh Amendment . . ."); *Dahn v. Adoption All.*, No. 13-cv-02504-RM-CBS, 2014 WL 12496539, at *3 (D. Colo. Aug. 28, 2014) (holding on a motion to dismiss that Moffat County Department of Social Services is an arm of the state).

Plaintiff argues that the Court should not follow the holdings in these cases because they are persuasive, not binding.  *Surreply* [#31] at 2.  However, Plaintiff has failed to cite any case which contradicts the holding that Colorado county departments of human services are arms of the state.[5]  *Contra id.* at 4-5 (citing cases out of New York, California, Ohio, and North Carolina).

---

[5]  The only Colorado case cited by Plaintiff here is *Davidson v. Sandstrom*, 83 P.3d 648 (Colo. 2004), for the proposition that county departments of human services "are political subdivisions of the state because they . . . provide[] adult and child protective services within [a] finite

Based on the consistent authority holding that Colorado county departments of human services are arms of the state, the Court finds that Defendant MCDHS is an arm of the state and is thus entitled to Eleventh Amendment immunity.  Therefore, to the extent Plaintiff seeks nominal and compensatory damages for his claims under § 1983 against the MCDHS Defendants, the Motion [#9] is **granted**, and the claims are **dismissed without prejudice**.[6]  *See Wauford v. Richardson*, 450 F. App'x 698, 699 (10th Cir. 2011) (stating that claims barred by the Eleventh Amendment should be dismissed without prejudice).

## 2.      Qualified Immunity

Defendants argue that, to the extent Plaintiff brings his § 1983 claims against Defendant Schmeeckle in her individual capacity, she is entitled to qualified immunity. *Motion* [#9] at 2, 13-14.   Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See,*

---

geographic region."  *Surreply* [#31] at 4.  In *Davidson*, 83 P.3d at 656, the court held that judicial districts are political subdivisions of the state "that exist[] primarily to discharge some function of local government."   Political subdivisions are not protected by Eleventh Amendment immunity. *Blea*, 2018 WL 6182432, at *3.   However, given the overwhelming consensus that Colorado county departments of human services are arms of the state which are subject to Eleventh Amendment immunity, not political subdivisions, the Court rejects Plaintiff's argument that Defendant MCDHS is a political subdivision, not an arm of the state.  *See, e.g.*, *Schwartz*, 2011 WL 1843309, at *5 (quoting *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1255 (10th Cir. 2007)) (holding that the county departments of human services did not constitute political subdivisions because "the absence of [the power to issue bonds or levy taxes] . . . renders an agency more like an arm of the state than a political subdivision"); *Freeman v. White*, No. 05-cv-00164-EWN-CBS, 2006 WL 2793139, at *12 (D. Colo. Sept. 28, 2006) (holding that the county department of human services was an arm of the state "for the purposes of administering and delivering social services").

[6]  Because claims for injunctive and declaratory relief against official capacity defendants are not necessarily prohibited under the Eleventh Amendment, the Court addresses Plaintiff's claims for injunctive and declaratory relief against the MCDHS Defendants separately below.

*e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982).  A government official is entitled to qualified immunity from liability for civil damages when her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.  *Id.* at 818.  A government official is entitled to qualified immunity "[i]n all but the most exceptional cases."  *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "The key to the qualified immunity inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotation marks omitted).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established."  *Id.*; *see also* *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity

determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

Here, Defendants argue that, because Plaintiff has failed to plausibly allege a constitutional violation under the Fourth, Eighth, or Fourteenth Amendments, he cannot support a § 1983 claim against Defendant Schmeeckle in her individual capacity and that she is thus entitled to qualified immunity. *Motion* [#9] at 14. Thus, the Court addresses each of Plaintiff's claims against Defendant Schmeeckle in her individual capacity under the Fourth, Eighth, and Fourteenth Amendment in turn.

### a.  Fourth Amendment

Under § 1983, Plaintiff may bring a claim under the Fourth Amendment for malicious prosecution. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Response* [#14] at 17. "It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983." *Wolford*, 78 F.3d at 489 (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)). Therefore, to determine whether Plaintiff has successfully stated a malicious prosecution claim under the Fourth Amendment, the Court turns to Colorado state tort law. *See id.*

"Generally, to prevail on a claim for malicious prosecution, the following elements must be satisfied: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007) (citing *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004)). Malicious prosecution actions need not only be based on criminal prosecutions, but can also be based on, for example,

civil suits and cross-claims, administrative proceedings, attachments, disciplinary actions, and arbitrations. *Walford v. Blinder, Robinson & Co., Inc.*, 793 P.2d 620, 623 (Colo. App. 1990) (citing cases); *see also Thompson*, 84 P.3d at 504 (holding that the filing of a lis pendens may form the basis of a claim for malicious prosecution).

Plaintiff argues that two legal proceedings could support his claim for malicious prosecution: (1) the administrative proceeding relating to Defendant Schmeeckle's investigation and substantiated finding on the allegations that Plaintiff had abused an at-risk adult, Mrs. Erker; and (2) the criminal proceeding relating to the alleged assault of Mrs. Erker.[7]  *Response* [#14] at 14-15.  The Court addresses each legal proceeding in turn.

### i.    Administrative Proceeding

Defendant Schmeeckle, under the supervision of Defendant MCDHS, investigated and found that the allegations that Plaintiff had abused an-at risk adult were substantiated, a process which constitutes an administrative law proceeding (the "Administrative Proceeding").  *Compl.* [#1] ¶¶ 14, 18; *see Velasquez v. Utah*, No. 2:20-cv-00205-DB-PMW, 2020 WL 1989388, at *1 (D. Utah Apr. 27, 2020) (noting that the action that the Utah Department of Human Services commenced against the plaintiff was administrative in nature).  On appeal, the CDHS "overturned the finding of [substantiated] and dismissed

---

[7]  Defendants argue that "[P]laintiff attempts to avoid dismissal of this claim by asserting two different theories of malicious prosecution in his response" and that he is effectively attempting to amend his complaint in doing so.  *Reply* [#16] at 5.  While a plaintiff is not permitted to allege new *facts* in his response, nothing prevents the plaintiff from making new *arguments* relating to the facts properly alleged in the complaint.  *See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002); *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  Thus, the Court finds that, to the extent Plaintiff makes new arguments relating to malicious prosecution in the Response [#14], he may properly do so.

the case because Mrs. Erker did not qualify as an at-risk adult for purposes of [APS]." *Compl.* [#1] ¶ 19.  Thus, the Administrative Proceeding ended in Plaintiff's favor.  *Cf. Heck*, 512 U.S. at 486-87 (holding that "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal authorized to make such determination"); *see also* Restatement (Second) of Torts § 674(b) cmt. j (Am. L. Inst. 1977).  The Court finds that Plaintiff has sufficiently alleged the first two elements of the malicious prosecution analysis as it pertains to the Administrative Proceeding, i.e., that Defendant Schmeeckle contributed to bringing the Administrative Proceeding against Plaintiff, and that the Administrative Proceeding ended in Plaintiff's favor.

Under the third element, Plaintiff must also allege sufficient facts to show that Defendant Schmeeckle made her finding without probable cause.  *See Hewitt*, 154 P.3d at 411.

> Probable cause means that [the] defendant in good faith had a reasonable belief that [the] plaintiff was liable for the claim that was made.
>
> The fact that the civil proceedings ended in favor of [the] plaintiff does not in itself prove a lack of probable cause . . . .  If the facts as known by [the] defendant] in [the] previous proceeding would cause a reasonable person to believe that [the plaintiff] had violated a civil law or private right, and that [the defendant] in good faith believed that [the plaintiff] had violated a civil law or private right, then [the defendant] acted on probable cause.

*Walford*, 793 P.2d at 624 (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 675 (Am. L. Inst., 1977).  For the purposes of the Administrative Proceeding, Defendant Schmeeckle's investigation of the allegation of abuse and her finding that the allegation was substantiated were rooted in her determination that Mrs.

Erker was an at-risk adult.  *See Compl.* [#1] ¶ 18.  Therefore, in order to determine whether Defendant Schmeeckle acted in the Administrative Proceeding without probable cause depends on whether she unreasonably determined that Mrs. Erker was an at-risk adult.

Plaintiff alleges that "[t]he fact that Mrs. Erker did not qualify as an 'at-risk adult' for purposes of APS should have been readily apparent and taken into consideration by Defendant Schmeeckle."  *Id.* ¶ 19.  Plaintiff asserts that this is because Mrs. Erker does not meet the definition of "at-risk adult" as outlined by Colo. Rev. Stat. § 18-6.5-102(2), which provides: "'At-risk adult' means any person who is seventy years of age or older or any person who is eighteen years of age or older and is a person with a disability as said term is defined in subsection (11) of this section."  *Id.* ¶ 21; *Response* [#14] at 6-7. Although Plaintiff concedes in the Response [#14] that Mrs. Erker has a brain injury, about which he provides no further allegations, Plaintiff argues that she does not qualify as having the disability of a "mental impairment" as that term is defined by Colo. Rev. Stat. § 24-34-501(1.3), nor any other disability outlined in Colo. Rev. Stat. § 18-6.5-102(11). *Response* [#14] at 7.

First, the Court notes that Plaintiff is not working with the relevant definition of "at-risk adult."  *See Reply* [#16] at 3.  Colo. Rev. Stat. § 18-6.5-102 is a part of the Criminal Code,[8] whereas the applicable definition is found in the Human Services Code (the

---

[8]  The Court notes that, even if the narrower definition of "at-risk adult" under the Criminal Code were the relevant definition, a person with a brain injury could still potentially be deemed an at-risk adult under that standard.  *See, e.g.*, *People v. Fair*, 312 P.3d 242, 243-44 (Colo. App. 2013) (concerning the sexual assault of a victim with brain damage who was classified as an at-risk adult).

"HSC"), i.e., Colo. Rev. Stat. § 26-3.1-101(1.5).  *See Reply* [#16] at 3.  The HSC contains

a broader definition of "at-risk adult":

> "At-risk adult" means an individual eighteen years of age or older who is susceptible to mistreatment or self-neglect because the individual is unable to perform or obtain services necessary for his or her health, safety, or welfare, or lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his or her person or affairs.

Colo. Rev. Stat. § 26-3.1-101(1.5); *see also* 12 Colo. Code Regs. § 2518-1:30.100 (2022)

(using same definition in the APS Administrative Code).  As an employee of Defendant

MCDHS, Defendant Schmeeckle would have been using this definition from the HSC and

the APS Administrative Code in determining whether Mrs. Erker was an at-risk adult.

Without citation, Defendants aver that "[a] brain injury is among bases on which

APS can find an adult to be 'at-risk.'"  *Reply* [#16] at 3.  This is not explicitly stated within

the HSC or the APS Administrative Code.  However, the Court can infer from a number

of sources that the existence of a brain injury is something that APS would consider in

determining that a person is an at-risk adult.  For example, in addition to Article 3.1 of the

HSC, i.e., Protective Services for Adults at Risk of Mistreatment or Self-Neglect, Article 1

of the HSC contains the Colorado Brain Injury Program.  *See* Colo. Rev. Stat. §§ 26-1-

301 to 312.  This Program establishes the Colorado brain injury trust fund board within

the CDHS and mandates that money from the trust fund be spent on services for people

with brain injuries and on education and research related to increasing the understanding

of brain injuries.  *See id.*  Additionally, the legislative history of the HSC indicates that

brain injuries were of serious concern to the Colorado legislature as it was in the process

of drafting the HSC.  H.R. 62-42, 2d Sess., HJR00-1005 (Colo. 2000) ("[W]e, the members

of the General Assembly recognize brain injury as a statewide problem, impacting people in all walks of life, and that we support the coordination of state and federal resources to provide the most effective, comprehensive services to persons with brain injuries and their families.").  Moreover, according to the APS Administrative Code, as a part of their continuing education, APS employees are encouraged to receive training on brain injuries.  12 Colo. Code Regs. § 2518-1:30.330.

The Court construes this authority to indicate that brain injuries are likely a condition that APS employees consider when evaluating whether a person is an at-risk adult.  Therefore, under the HSC and the APS Administrative Code, a person in Defendant Schmeeckle's position could have reasonably and in good faith determined that Mrs. Erker, a person with a brain injury, was an at-risk adult who was susceptible to mistreatment or self-neglect.  *Reply* [#16] at 3.  Based on that determination, Defendant Schmeeckle had probable cause to carry out an investigation of the allegation that Plaintiff had assaulted Mrs. Erker.

The Court notes that, while a brain injury is very likely a factor the APS considers in determining that a person is an at-risk adult, Plaintiff has not alleged any information in the Complaint [#1] about Mrs. Erker's brain injury or its effect on her.  He only says that "[t]he fact that Mrs. Erker did not qualify as an "at-risk adult" for purposes of APS should have been readily apparent[.]"  *Compl.* [#1] ¶ 19.  Ultimately, Plaintiff has not plausibly alleged that there was *no* probable cause, and thus fails to meet this element of his malicious prosecution claim.  *Hewitt*, 154 P.3d at 411.

To sufficiently state a claim for malicious prosecution, Plaintiff must also allege facts that demonstrate that Defendant Schmeeckle instigated the Administrative Proceeding with malice.  *See Hewitt*, 154 P.3d at 411.  Malice, within the context of malicious prosecution, "is any motive other than a desire to bring an offender to justice . . . [and] may be inferred from a want of probable cause."  *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954).  Plaintiff makes the conclusory statement that the "investigation . . . was undertaken with malice[.]"  *Compl.* [#1] ¶ 59.  However, it is insufficient for Plaintiff to simply state that Defendant Schmeeckle acted with malice, without alleging a plausible factual basis that would allow the Court to infer that Defendant Schmeeckle was motivated by malice.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Thus, Plaintiff has not sufficiently alleged this element.

In short, the Court finds that Plaintiff has not plausibly alleged that Defendant Schmeeckle lacked probable cause or that she was motivated by malice.  Thus, the Court finds that Plaintiff has failed to state a malicious prosecution claim under the Fourth Amendment in relation to the Administrative Proceeding.  Accordingly, the Motion [#9] is **granted** as to this portion of Plaintiff's Fourth Amendment claim.  Further, because Plaintiff has not alleged a constitutional violation, Defendant Schmeeckle is entitled to qualified immunity to the extent the claim is asserted against her in her individual capacity. *See Saucier*, 533 U.S. at 201.  However, Plaintiff may be able to cure the deficiencies in

his pleadings on leave to amend.  Accordingly, to the extent Plaintiff brings his claim under the Fourth Amendment against Defendant Schmeeckle in her individual capacity, as it pertains to the Administrative Proceeding, the claim is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that "[if] it is at all possible that a party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend").

### ii.    Criminal Proceeding

The Court first notes that both Plaintiff and Defendants refer in their filings to Plaintiff's criminal proceeding in MCDC (the "Criminal Action"), relating to the alleged assault of Mrs. Erker.  *See generally Compl.* [#1]; *Motion* [#9] at 9.  The Court may take judicial notice of materials in a state court file, *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008), although it does so "not for the truth of the facts recited therein, but for the *existence* of the [materials] . . . ."  *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (internal quotation marks omitted; emphasis added). However, although both parties have referenced the Criminal Action, and Defendants have provided the number of the case in MCDC, *Motion* [#9] at 9, the Court does not have independent access to MCDC records, and the parties have not provided copies of any relevant documents to the Court.  Therefore, the Court only considers allegations relating to the Criminal Action as they are presented in the Complaint [#1].  *See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002); *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint").

Plaintiff primarily alleges that Defendant Schmeeckle "exceeded the bounds of her authority" by "interfering with the Criminal Action[.]"   *Compl.* [#1] ¶ 29.   According to Plaintiff, Defendant Schmeeckle interfered with the Criminal Action in a number of ways. First, Plaintiff alleges that Defendant Schmeeckle called the Morgan County District Attorney's office and requested that the charge against Plaintiff be elevated to a felony due to Mrs. Erker's status as an at-risk adult.   *Id.* ¶ 20.   Second, Plaintiff alleges that Defendant Schmeeckle "inappropriately continued to participate in the Criminal Action, including formally objecting to Plaintiff's Motion to Modify Protection Order, even though [neither she nor MCDHS are] guardians of Mrs. Erker and do not represent her interests as she does not qualify as an at[-]risk adult."   *Id.* ¶ 30.   Third, Plaintiff alleges that Defendant Schmeeckle wrongfully called the police on Plaintiff after Mrs. Erker claimed that he had violated the terms of a protection order[.]"   *Id.* ¶ 26.

"To demonstrate a favorable termination of a criminal prosecution for purposes of [a] Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."   *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).   Plaintiff need not "show that the criminal prosecution ended with some affirmative indication of innocence."   *Id.* at 1341.   A showing that the prosecution was dismissed, even without explanation, is sufficient to satisfy the favorable termination requirement.   *Id.* at 1340.

Plaintiff has not made any allegations whatsoever in the Complaint [#1] relating to how the Criminal Action ended, let alone any allegations that it ended in his favor. Working from the allegations in the Complaint [#1] alone, the Court could not even

necessarily conclude that the Criminal Action has ended at all.  *See id.* ¶ 38 (referring to Defendant Schmeeckle's alleged conduct as "*continued* interference in the Criminal Action" (emphasis added)).   In the Response [#14], Plaintiff asserts that the Criminal Action ultimately ended in his acquittal.  *Response* [#14] at 2.  This is a fact newly alleged in the Response [#14], and thus is not properly before the Court.  *See Cnty. of Santa Fe, N.M.*, 311 F.3d at 1035; *Jojola*, 55 F.3d at 494.   However, because it is clear from the Response [#14] that, on leave to amend, Plaintiff could adequately allege that the Criminal Action ended in his favor, the Court further addresses the sufficiency of Plaintiff's claim.

Plaintiff primarily argues that it was improper for Defendant Schmeeckle to be involved in the Criminal Action because she "exceeded the bounds of her authority" in doing so.  *Compl.* [#1] ¶ 29.  However, as noted above with respect to the Administrative Proceeding, Plaintiff merely asserts the conclusory allegation that the "prosecution [was] undertaken with malice[.]"  *Id.* ¶ 59.  The conduct of Defendant Schmeeckle that Plaintiff alleges with respect to the Criminal Action demonstrates an apparent effort by Defendant Schmeeckle to bring to justice a person whom she believed had assaulted an at-risk adult.  *See id.* ¶¶ 20, 26, 30.  Because malice in the malicious prosecution context is "any motive other than a desire to bring an offender to justice[,]" *Montgomery Ward & Co.*, 272 P.2d at 646, Plaintiff has not alleged a plausible factual basis that Defendant Schmeeckle acted with malice.  *See Iqbal*, 556 U.S. at 678.  Thus, the Court finds that Plaintiff has failed to allege the element of malice, which is essential to a malicious prosecution claim under the Fourth Amendment.

Plaintiff has failed to allege that Defendant Schmeeckle committed a violation of the Fourth Amendment with respect to the Criminal Action, and, accordingly, the Motion [#9] is **granted** as to this portion of Plaintiff's Fourth Amendment claim.  Further, because Plaintiff has not alleged a constitutional violation, Defendant Schmeeckle is entitled to qualified immunity to the extent the claim is asserted against her in her individual capacity. *See Saucier*, 533 U.S. at 201.  However, Plaintiff may be able to cure the deficiencies in his pleadings on leave to amend.  Accordingly, to the extent Plaintiff brings his claim under the Fourth Amendment against Defendant Schmeeckle in her individual capacity, as it pertains to the Criminal Action, the claim is **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 126.

### b.    Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.   "[T]he Eighth Amendment's proscription against 'cruel and unusual punishment' applies only to convicted inmates."  *Halik v. Darbyshire*, No. 20-cv-01643-PAB-KMT, 2021 WL 4556188, at *13 (D. Colo. Aug 23, 2021) (citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) ("The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes."); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt[.]")).

Plaintiff has not alleged in the Complaint [#1] that he has been convicted of a crime. Thus, the Eighth Amendment's prohibition of "cruel and unusual punishment" does not apply to his case.  Furthermore, likely sensing the inapplicability of the Eighth Amendment to this case, neither party mentions the Eighth Amendment even once in any of the filings after the Complaint [#1].  Plaintiff would be unable to cure the deficiencies in his pleadings as to this issue on leave to amend.   Accordingly, the Motion [#9] is **granted** as to Plaintiff's claim under the Eighth Amendment.  Because Plaintiff does not adequately allege that Defendant Schmeeckle violated the Eighth Amendment, she is entitled to qualified immunity to the extent the claim is asserted against her in her individual capacity.  *See Saucier*, 533 U.S. at 201.  Plaintiff's claim against Defendant Schmeeckle in her individual capacity under the Eighth Amendment is therefore **dismissed with prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### c.    Fourteenth Amendment

Plaintiff argues that Defendant Schmeeckle violated his right to procedural due process under the Fourteenth Amendment by making "a finding of [substantiated] against [Plaintiff] without first engaging in a full review of the evidence [that Plaintiff, himself,] provided and the definition of an 'at-risk adult' under the statute."[9]  *Response* [#14] at 17.

---

[9] Plaintiff alleges in the Complaint [#1] that he provided video evidence to Defendants relating to the alleged assault of Mrs. Erker.  *Compl.* [#1] ¶ 17.  In connection with the present Motion [#9], Defendants provided a CD to the Court with the videos purportedly referenced by Plaintiff. Consideration of the contents of this video evidence is unnecessary for the purposes of this Order, however.  Therefore, the Court does not need to decide whether consideration of the evidence in connection with the Motion [#9] would require converting the Motion [#9] to a motion for summary

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. amend. XIV). Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The Tenth Circuit has outlined "a two-step inquiry [in determining whether an individual's procedural-due-process rights were violated]: (1) Did the individual possess a protected property [or liberty] interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)) (internal quotation marks omitted; alterations in original).

"[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972) (citation omitted). "'Liberty' and 'property' are broad and majestic terms. They are among the '(g)reat (constitutional) concepts . . . purposely left to gather meaning from experience . . . .'" *Id.* at 571 (citation omitted; alterations in original). The Supreme Court has held that "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. By the same token, the Court has required due process protection for deprivations of liberty beyond the sort of formal constraints imposed by the criminal

---

judgment. *See U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)); *see Defs.' Ex. A*, Interior Video [#9-1] ("Interior Video"); *Defs.' Ex. B*, Exterior Video [#9-1] ("Exterior Video").

process." *Id.* at 571-72. "[W]hile the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries." *Id.* at 572. The Supreme Court has stated the following regarding the meaning of "liberty" within the context of the Fourteenth Amendment:

> Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Id.* (alteration in original).

Under the Due Process Clause, there is no right to procedure in and of itself. *See Olim v. Wakinekona*, 461 U.S. 238, 250 & n.12 (1983); *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). The "constitutional purpose [of due process] is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*, 461 U.S. at 250 (citation omitted). "To be protected by procedural due process, an interest must be *guaranteed by state law* when specified substantive predicates exist." *Elliott*, 675 F.3d at 1245 (emphasis added; original emphasis omitted).

Generally, most plaintiffs argue that a statutory requirement creates an entitlement to a substantive interest subject to procedural due process protection. *See id.* at 1244. Here, however, Plaintiff does not allege or argue that any part of the HSC or the APS Administrative Code, or any other state law, creates a substantive interest to which he is entitled, or that Defendant Schmeeckle was required as a part of her investigation to consider evidence that Plaintiff provided himself. To the contrary, if he were to review the HSC and the APS Administrative Code, he would find that there is no requirement that

Defendant Schmeeckle consider as a part of an APS investigation and assessment additional evidence that an alleged perpetrator submitted himself.  *See* Colo. Rev. Stat. § 26-3.1-103 (APS evaluation and investigation requirements); 12 Colo. Code Regs. § 2518-1:30.520 (2022) (APS investigation requirements); 12 Colo. Code Regs. § 2518-1:30.530 (2022) (APS assessment requirements).

Additionally, Plaintiff asserts in the Response [#14] that Defendant Schmeeckle violated his right to procedural due process by not conducting "even the most basic review of the statutes at issue" or "the definition of an 'at-risk adult' under the statute[.]" *Response* [#14] at 16.  First, Plaintiff does not allege in the Complaint [#1] that Defendant Schmeeckle did not review the relevant statutes or the definition of "at-risk adult," and thus this allegation newly raised in the Response [#14] is not properly before the Court. *See Cnty. of Santa Fe, N.M.*, 311 F.3d at 1035; *Jojola*, 55 F.3d at 494.  However, even if Plaintiff had alleged that Defendant Schmeeckle did not review the relevant statutes, that alleged fact does not assert a substantive interest to which Plaintiff had an entitlement; instead it would be a demand for certain process in and of itself.  *See Elliott*, 675 F.3d at 1244-45 ("[A]n entitlement is protected by the Due Process Clause only if it is an interest in life, liberty, or property; and not all entitlements are such interests."); *Olim*, 461 U.S. at 250.

The Court finds that Plaintiff has not adequately alleged that Defendant Schmeeckle violated his right to procedural due process under the Fourteenth Amendment.  Accordingly, the Motion [#9] is **granted** as to this claim.  Further, because Plaintiff did not assert a constitutional violation, Defendant Schmeeckle is entitled to

qualified immunity to the extent the claim is asserted against her in her individual capacity. *See Saucier*, 533 U.S. at 201.  It is unlikely that, on leave to amend, Plaintiff would be able to cure the deficiencies in his pleadings.  Therefore, to the extent that Plaintiff brings his claim under the Fourteenth Amendment against Defendant Schmeeckle in her individual capacity, the claim is **dismissed with prejudice**.  *See Brereton*, 434 F.3d at 1219.

### 3.    Claims for Injunctive and Declaratory Relief as to MCDHS Defendants

The Court found above that Plaintiff's claims for nominal and compensatory damages against the MCDHS Defendants cannot proceed because the MCDHS Defendants are protected by Eleventh Amendment immunity.  However, Plaintiff also brings claims against the MCDHS Defendants for injunctive and declaratory relief. *Compl.* [#1] ¶ 5.  The Eleventh Amendment does not provide protection from suit for types of relief other than damages.  *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001) ("Although citizens may not generally sue states in federal court under the Eleventh Amendment, the *Ex parte Young* doctrine has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities.").  The Tenth Circuit has held that:

> In order to conclude that [] plaintiffs . . . may proceed against [] defendant state officials, we must find that the following four requirements are met: (1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; (3) the plaintiffs seek prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate "special sovereignty interests."

*Id.* (citing *Elephant Butte Irrigation Dist.*, 160 F.3d 602, 609 (10th Cir. 1998)).

Because "[t]he *Ex parte Young* exception [to Eleventh Amendment immunity] . . . applies only to individual defendants[,]" Plaintiff's claim for injunctive and declaratory relief against Defendant MCDHS itself cannot proceed.   *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019).   The Court found above that Plaintiff has not sufficiently alleged that Defendant Schmeeckle has committed any constitutional violation under the Fourth, Eighth, or Fourteenth Amendments.   Therefore, just as the claims against her in her individual capacity may not proceed, the claims against her in her official capacity similarly fail.

Furthermore, Plaintiff has not alleged specifically that Defendants Frenier or Segura committed any constitutional violation themselves.   Plaintiff merely alleges that "Defendants Frenier and Segura were responsible for the hiring, retention, supervision, and training of Defendant Schmeeckle[,]" without providing any further explanation as to how they may have violated Plaintiff's constitutional rights.   *Compl.* [#1] ¶ 10.   In § 1983 suits, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"   *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010) (internal quotation marks omitted; citation omitted). Therefore, even if Defendant Schmeeckle had violated Plaintiff's constitutional rights, Defendants Frenier and Segura may not be held liable for her conduct on that basis alone. Because there is no indication in the Complaint [#1] that Defendants Frenier or Segura violated Plaintiff's rights in any way, it is unlikely that Plaintiff would be able to cure the deficiencies in his pleadings on leave to amend.   Accordingly, to the extent Plaintiff seeks injunctive and declaratory relief against Defendant MCDHS and the individual MCDHS

Defendants in their official capacity, the Motion [#9] is **granted**, and the claims are **dismissed with prejudice**.  *See Brereton*, 434 F.3d at 1219.

### 4.   Municipal Liability

Plaintiff additionally brings this action against Defendant BOCC, asserting that it is liable for Defendant Schmeeckle's conduct under the doctrine of respondeat superior. *Compl*. [#1] ¶ 63.  As the Court explained above with respect to the MCDHS Defendants, supervisory liability under § 1983 cannot be based on respondeat superior.  *Dodds*, 614 F.3d at 1201, 1202 & n.10.   While "the Supreme Court has 'consistently refused to hold municipalities liable under a theory of *respondeat superior*[,]'" it has "nonetheless [] imposed liability upon municipalities when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights."  *Id.* at 1202 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997)). The Tenth Circuit has held that:

> [T]o establish municipal liability, a plaintiff must *first* demonstrate a "municipal policy or custom," which may take one of the following forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

In the Complaint [#1], Plaintiff fails to allege the existence of any specific policy of Defendant BOCC that would meet the above criteria and render Defendant BOCC subject to municipal liability.   Plaintiff does assert that Defendant BOCC is responsible for "negligent training and supervision of Defendant Schmeeckle[.]"   *Compl.* [#1] ¶ 64. However, he has not alleged any specific facts that would allow a plausible inference that Defendant BOCC acted with deliberate indifference as is required "for claims of inadequate hiring, training, or other supervisory practices[.]"   *Waller*, 932 F.3d at 1284. Thus, Plaintiff has failed to sufficiently allege that Defendant BOCC is liable under § 1983. It is unlikely that Plaintiff would be able to cure the deficiencies in his pleadings on leave to amend.   Accordingly, the Motion [#9] is **granted** with respect to this issue, and Plaintiff's claims against Defendant BOCC are **dismissed with prejudice**.   *See Brereton*, 434 F.3d at 1219.

## B.   State Law Claims

In addition to his constitutional claims under § 1983, Plaintiff brings Colorado state law claims for defamation, defamation per se, intentional infliction of emotional distress, malicious prosecution, and negligence.   *Compl.* [#1] ¶¶ 41-69.   28 U.S.C. § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

State and federal claims form part of the same case or controversy if they "derive from a common nucleus of operative fact."   *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

725 (1966).  However, pursuant to 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."

Plaintiff brings this action in federal court "pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States."  *Compl.* [#1] ¶ 1.  He does not allege that the Court has diversity jurisdiction over the case under § 1332.  Thus, in addition to the original jurisdiction the Court has over Plaintiff's constitutional claims, the Court has supplemental jurisdiction over Plaintiff's state law claims under § 1367.  *See United Mine Workers of Am.*, 383 U.S at 725; 28 U.S.C. § 1367.

However, "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court *should* decline the exercise of jurisdiction by dismissing the case without prejudice.'"  *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (emphasis added).  The Court found above that Plaintiff has failed to state any claim under § 1983 and that, therefore, all of his federal claims must be dismissed.  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Accordingly, the Motion [#9] is **granted** as to Plaintiff's state law claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and Plaintiff's state law claims are **dismissed without prejudice**.  *See Bauchman*, 132 F.3d at 549.

### IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#9] be **GRANTED**, that all claims in this case be **DISMISSED**, as outlined above, and that the Clerk of Court is directed to **CLOSE** this case.

DATED: July 27, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge